UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

KERRY HUNTLEY,

                              Petitioner,

          -v-                                         9:00-CV-0191
                                                      (DNH/GHL)
SUPERINTENDENT, Southport Correctional Facility,

                              Respondent.

_____

APPEARANCES:                               OF COUNSEL:

KERRY HUNTLEY, 96-A-6846
Petitioner *Pro Se*
Southport Correctional Facility
P.O. Box 2000
Pine City, New York 14871

HON. ELIOT SPITZER                         STEVEN H. SCHWARTZ, Esq.
Counsel for the Respondent                 Assistant Attorney General
Office of Attorney General
State of New York
The Capitol
Albany, New York 12224-0341

GEORGE H. LOWE, United States Magistrate Judge

### REPORT-RECOMMENDATION

## I.      BACKGROUND

### _____A.     State Court Proceedings

          According to the testimony adduced at trial, on the evening of March 17, 1996, Alexander

Marcano and George Rodriguez assembled at the residence of petitioner, *pro se* Kerry Huntley, on

Foster Avenue in Schenectady, New York.  *See* Transcript of Trial of Kerry Huntley (1/23/97)

("Trial Tr.") at p. 1549.  Marcano and Huntley were friends, Trial Tr. at p. 983, while Huntley was

Rodriguez's crack cocaine supplier, Trial Tr. at p.1538.  Both Marcano and Huntley owned sawed-off .22 caliber semiautomatic rifles.  Trial Tr. at pp. 1002-03, 1543-44.  Huntley had loaned Rodriguez his gun that evening.  Trial Tr. at pp. 1701-07.  Marcano and Rodriguez testified that the three men took Rodriguez's car, the two loaded rifles, and two ski masks and first drove to a "weed spot", or a house where marijuana is sold, to conduct a robbery.  Trial Tr. at pp. 1008-1012, 1230-32.  Upon finding that location too crowded, the men drove to the Cumberland Farms store at State and Elm Streets in Schenectady.  Trial Tr. at p. 1013.  Huntley parked the car down the street from the store, rather than in the customer parking area in front of the store.  Trial Tr. at p. 1762. Marcano and Rodriguez covered their faces with the ski masks and left the vehicle carrying the rifles.  Trial Tr. at p. 1015.  While Huntley remained in the car, Marcano and Rodriguez entered the Cumberland Farms and demanded money from the store clerk.  Trial Tr. at pp. 636-39, 1234-36. Marcano fired shots, grazing the clerk's head.  Trial Tr. at pp. 639-40, 1017-18.  They grabbed money from the register, exited the store, and Huntley drove them away.  Trial Tr. at pp. 695, 1559-61.  According to Marcano and Rodriguez, the men split the proceeds of the robbery equally.  Trial Tr. at pp. 1023, 1239.

The day after the robbery, Rodriguez was arrested on an unrelated matter with Huntley's rifle and a ski mask in his possession.  Trial Tr. at pp. 731-36.  While in custody, Rodriguez informed the Schenectady Police Department of the robbery and shooting at the Cumberland Farms and implicated both Huntley and Marcano as his accomplices.  Trial Tr. at pp. 787-93.

Timothy Beman, a friend of Huntley and Marcano, testified that upon learning of Rodriguez's arrest, Huntley and Marcano told him about the robbery and asked him to drive them to New York City to avoid the police.  Trial Tr. at pp. 1144-49.  Huntley also informed Beman of his

2

intent to re-supply his crack cocaine stash while in New York City.  Trial Tr. at pp.1150-52, 1628.[1]

Unknown to Huntley, Beman was a Federal Drug Enforcement Agency ("DEA") informant.  Trial

Tr. at p. 1151.  Beman's DEA contact instructed him to drive Huntley and Marcano to New York

City and to notify him on their way back up to the Albany area so that police could stop Beman's

car.  Trial Tr. at pp. 1850-51.  Beman testified that on March 18, 1997, he drove Huntley and

Marcano to New York City, where Huntley purchased thirty-five vials of crack cocaine.  Trial Tr. at

pp. 1153, 1783.  On their March 19 return trip, New York State Police pulled over Beman's car on

the New York State Thruway in Albany County.  Trial Tr. at p. 1158.  According to testimony

adduced at petitioner's pre-trial suppression hearing pursuant to *People v. Huntley*, 15 N.Y.2d 72

(1965), petitioner was arrested on drug charges for possession of the crack cocaine.  *See* Transcript

of *Huntley* Hearing (12/5/96) ("H.") at R.375.  Marcano also was arrested later and provided police

with a statement identifying Huntley as the driver of the getaway car involved in the Cumberland

Farms robbery.  Trial Tr. at pp. 865-66; *see also* Affidavit of Alexander Marcano (3/21/96) at R.78-

85.

On March 22, 1996, Huntley appeared in Bethlehem County Court on the aforementioned

drug charges.  H. at R.318-19.  Huntley was represented by an attorney on the drug charges and was

released on his own recognizance.  H. at R.319-21.  Upon his release, Schenectady Police Detective

Robert McHugh informed Huntley's attorney of his intent to question petitioner regarding the

---

[1] Due to the pre-trial ruling pursuant to *People v. Ventimiglia*, 52 N.Y.2d 350 (1981), Beman was unable to testify regarding Huntley's desire to travel to New York City to replenish his crack cocaine supply. *See* Transcript of Pre-trial Hearing (1/10/97) (reproduced in Record on Appeal) ("R.") at R.300-01. However, during his testimony, Beman indicated that Huntley mentioned a second reason for the trip to him. Trial Tr. at pp. 1150-52.  Thereafter, Huntley testified that Beman drove him and Marcano to New York City to buy crack cocaine.  Trial Tr. at p. 1628.

3

robbery.  H. at R.324.  Huntley's attorney agreed, and thereafter conferred in private with petitioner.

H. at R.324-27.

Thereafter, Huntley accompanied Investigator McHugh to Schenectady.  Trial Tr. at pp. 874-

75; H. at R.341-42.  Huntley was not arrested, handcuffed or restrained during the drive to

Schenectady.  Trial Tr. at p. 817.  Moreover, Huntley was not questioned regarding the robbery and

shooting.  Trial Tr. at p. 875; H. at R.327-28.  Following his arrival at the Schenectady Police

Department, Investigator McHugh read Huntley his *Miranda* rights.[2]  Trial Tr. at pp. 876-78; H. at

R.347-48.  Huntley acknowledged that he understood his *Miranda* rights, and then signed a form

agreeing to waive those rights.  Trial Tr. at pp. 877-78; H. at R.89, 348-53.  Investigator McHugh

then questioned Huntley about the Cumberland Farms robbery and shooting for approximately one

hour and ten minutes.  H. at R.361.  During the interview, Huntley was not restrained.  Trial Tr. at p.

942; H. at R.346-47.  Huntley never requested counsel or stopped the interrogation at any point.

Trial Tr. at pp. 881-82; H. at R.379-80.  No threats or coercive measures were made to Huntley

during the interview.  Trial Tr. at p. 882; H. at R.353-54.  Investigator McHugh told Huntley that if

Huntley cooperated with the investigation, he would inform the District Attorney of his cooperation.

H. at R.356.

Huntley gave Investigator McHugh an oral recitation of his version of the robbery.  Trial Tr.

at pp. 905-06; H. at R.170.  Huntley then agreed to reduce his statement to writing.  Trial Tr. at pp.

928-29; H. at R.170.  Accordingly, Huntley recounted his version again as Investigator McHugh

transcribed it.  Trial Tr. at pp. 928-29; H. at R.170-71.  Upon completing the written statement in

about one hour, Investigator McHugh gave it to Huntley to read and to make any changes.  Trial Tr.

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

at pp. 929-37; H. at R.171-72. Huntley confirmed that the statement was accurate, true, and complete, and then signed each page of the statement as well as initialed any changes. Trial Tr. at pp. 930-31; H. at R.171-72. Investigator McHugh testified that he did inform the District Attorney of Huntley's cooperation. H. at R.366.

In his statement, which was admitted at trial, Huntley indicated that Marcano and Rodriguez met at Huntley's house at 10 p.m. on the evening of the robbery. *See* Affidavit of Kerry Huntley (3/22/96) ("Aff.") at R.89-93; Trial Tr. at pp. 933-37. He further stated he owned one of the sawed off .22 caliber rifles used in the robbery, which he had purchased from a "crack head", and Marcano owned the other. Aff. at R.90-93. Marcano had brought his rifle to Huntley's house that night, and prior to the robbery, Huntley loaned Rodriguez his own gun. Aff. at R.90-91. At approximately 11 p.m., Rodriguez suggested the three men go out to find some money. Aff. at R.91. With the two guns, they drove around Schenectady. Aff. at R.91. Huntley admitted he drove the car to the Cumberland Farms on State and Elm Streets, and parked in a lot near the back of the store. Aff. at R.92. Huntley witnessed Marcano and Rodriguez don the ski masks in the car and approach the Cumberland Farms, each carrying a rifle. Aff. at R.92. Huntley waited in the car for about five minutes until they returned. Aff. at R.92. According to Huntley, when Marcano and Rodriguez returned to the car, Rodriguez exclaimed "He shot the bitch, he shot the bitch, Drive, Drive." Aff. at R.92. After Huntley drove the three men to Rodriguez's house, he learned the details of what transpired inside the Cumberland Farms, including the shooting of the clerk. Aff. at R.92-93. Later that night, Marcano told Huntley he thought the shots he fired may have killed the clerk. Aff. at R.93. In his statement, Huntley admitted he drove the getaway car, but denied any knowledge that Marcano and Rodriguez intended to commit the robbery. Aff. at R.90-93.

In addition to this statement, Huntley assisted Investigator McHugh in drawing a diagram of the area around the convenience store, including where he parked the car.  Trial Tr. at p. 1604; Aff. at R.92.  Huntley also identified Marcano, Rodriguez and his own rifle in a store security photograph taken during the robbery, and signed the photo under the caption stating: "George in front with my gun – Al in back with his gun – ski masks on both that they put on in the car in my presence."  Trial Tr. at p. 917; Aff. at R.93.

On May 31, 1996, a Schenectady County grand jury returned a six count indictment against Huntley.  In that accusatory instrument, petitioner was charged with one count of second degree attempted murder, two counts of first degree robbery, two counts of second degree robbery, and one count of second degree assault.  *See* Indictment No. 396-25 at R.72-75 ("Indictment").  Huntley's accomplices did not proceed to trial.  Marcano pled guilty to first degree robbery, agreed to testify against both accomplices, and received a sentence of nine to eighteen years in prison.  Trial Tr. at pp. 979-82.  Rodriguez also pled guilty to first degree robbery, agreed to testify against both accomplices, and received a sentence of ten and a half years in prison.  Trial Tr. at pp. 1206-08.

The District Attorney's office agreed to dismiss the second degree attempted murder and second degree assault charges against Huntley given the lack of evidence of intent as required by New York Penal Law.  Trial Tr. at pp. 15-19, 300-02.  Huntley pled not guilty as to the remaining four charges.  *See* R.23-24 ("Arraignment").  Huntley refused to accept a plea bargain on the indictment, and elected to proceed to trial on the four counts of robbery.  *See* Pre-Trial Proceedings (1/9/97 and 1/10/97) at R.114-18, 213-25.

Prior to Huntley's trial, petitioner filed an Omnibus Motion dated August 1, 1996 seeking suppression of his custodial statements pursuant to New York's Criminal Procedure Law ("CPL")

6

Section 710.20(3) on the grounds that the statements were involuntarily made.  R.44-46 ("Omnibus

Motion").  To determine the voluntariness of petitioner's statements, Schenectady County Court

Judge Michael C. Eidens conducted a hearing pursuant to *People v. Huntley*, 15 N.Y.2d 72 (1965),

on October 10, 22, 29 and December 5, 1996.  *See* H. at R.105-98, 311-401; *see also* Transcript of

*Huntley* Hearing (10/29/96) ("H.") (reproduced in Respondent's Appendix) ("RA.") at RA.56-69.

Following the conclusion of the *Huntley* hearing, Judge Eidens declined to suppress Huntley's

statements to Investigator Robert McHugh as involuntarily made.  *See Huntley* Decision and Order

at R.402-09.  Judge Eidens determined that there was no evidence Huntley's statements were

induced by improper police conduct which would create a substantial risk of petitioner

incriminating himself or would impair petitioner's ability to decide to make a statement.  R.408.

During the course of the *Huntley* hearing, it appears that Huntley made an oral request for a

hearing pursuant to *Dunaway v. New York*, 442 U.S. 200 (1979) regarding the probable cause for his

arrest.  H. at RA.56-69.  Judge Eidens issued a Decision and Order on November 25, 1996 denying

Huntley's request for a *Dunaway* hearing because despite having the opportunity to do so, Huntley

failed to support his request with sufficient factual allegations as required by New York law.  *See*

*Dunaway* Decision and Order at R.309-10.

Huntley's trial commenced on January 15, 1997 in Schenectady County Court with County

Court Judge Guy P. Tomlinson presiding.  At that proceeding, Huntley testified in his own defense.

Huntley's trial testimony regarding the robbery clearly contradicted his prior statements to

Investigator McHugh.  Indeed, at trial, Huntley contended Investigator McHugh fabricated some of

the statements contained in his pre-trial affidavit.  Trial Tr. at pp. 1781-82.  Specifically, Huntley

testified that on the evening of the robbery, Rodriguez indicated he planned to pick up money owed

to him, and Marcano and Huntley agreed to accompany him.  Trial Tr. at pp. 1742, 1750-51.

Although he did not know Rodriguez well, Huntley loaned him his .22 caliber rifle before the three

men left the house.  Trial Tr. at pp. 1701-07.  Huntley asserted the three men left his house and

drove to a weed house to retrieve Rodriguez's money.  Trial Tr. at p. 1756.  While at that location,

Marcano and Rodriguez alluded to robbing the weed house, upon which Huntley allegedly

demanded to drive the car home.  Trial Tr. at pp. 1757-59.  On their way home, Huntley parked

down the street from the Cumberland Farms on State and Elm Streets so that Rodriguez could stop

in the store.  Trial Tr. at pp. 1760-62.  Huntley then testified that Marcano and Rodriguez left the

vehicle wearing hats and carrying no guns.  Trial Tr. at pp. 1763-66.  According to Huntley,

Marcano and Rodriguez ran back to the car about five minutes later wearing masks and carrying

guns.  Trial Tr. at p. 1775.  Marcano and Rodriguez informed Huntley they had shot someone while

in the store, and Huntley drove them away from the scene of the crime.  Trial Tr. at pp. 1776-78.

While Huntley admitted he drove Rodriguez's car from the convenience store following the robbery,

he insisted he did not know that Marcano and Rodriguez intended to commit the crime.  Trial Tr. at

pp. 1559-68.

At the conclusion of his trial, Huntley was found guilty of two counts of first degree robbery

and two counts of second degree robbery.  Trial Tr. at pp. 2113-14.  On March 6, 1997, Huntley was

sentenced as a second felony offender by Judge Tomlinson to twenty-five years' imprisonment on

each of the two counts of first degree robbery and fifteen years' imprisonment on each of the two

counts of second degree robbery, to be served concurrently.  *See* Sentencing Transcript ("Sentencing

Tr.") at R.609-10.  Huntley appealed his convictions and sentences to the New York Supreme

Court, Appellate Division, Third Department; however, on March 11, 1999, that court affirmed

Huntley's convictions and sentences in all respects. *People v. Huntley*, 259 A.D.2d 843 (3d Dept. 1999). The New York Court of Appeals denied Huntley's application for leave to appeal on June 25, 1999. *People v. Huntley*, 93 N.Y.2d 972 (1999).

### B.   Proceedings in this Court

Huntley commenced this action, *pro se*, on January 23, 2000 in the Northern District of New York. *See* Petition (Dkt. No. 1).

In his petition, Huntley asserts four separate grounds in support of his request for federal habeas intervention. Specifically, Huntley argues that: (i) law enforcement officials lacked probable cause to arrest him, and the trial court erred in denying his request for a hearing pursuant to *Dunaway v. New York*, 442 U.S. 200 (1979), to permit him to challenge the basis for probable cause; (ii) his statements to police were improperly coerced; (iii) the testimony of his accomplices was not corroborated and lacked credibility, as did the testimony of the confidential informant; accordingly, his conviction was based on insufficient evidence, as well as was against the weight of the evidence; and (iv) the sentence imposed by the trial court was harsh and excessive. *See* Petition, Grounds One through Four.[3] Then-United States Magistrate Judge Gary L. Sharpe directed the respondent to file a response to the petition, Dkt. No. 3, and on May 25, 2000, the Office of the Attorney General for the State of New York, acting on respondent's behalf, filed an answer and

---

[3] Amidst his claims in support of Ground One, petitioner states that his motion for a *Dunaway* hearing was denied "for allegedly [sic] minor procedural errors, in that my lawyer failed to place sufficient facts on the record to justify for [sic] Dunaway hearing not to be denied." Petition, Ground One. In addition to petitioner's four enumerated grounds for relief, the Court also will address this statement to the extent it can be construed as an allegation of ineffective assistance of counsel.

memorandum of law, together with pertinent state court records,[4] in opposition to Huntley's

pleading.  Dkt. Nos. 7-8.  In opposing Huntley's petition, respondent argues that petitioner's claims

under grounds one and three are not cognizable for review in a habeas proceeding, and in any event,

none of petitioner's habeas claims have merit.  *See* Dkt. No. 8 ("Resp. Mem.").[5]

By Order dated February 12, 2004, the Hon. Frederick Scullin, Jr., Chief Judge, re-assigned

this matter to this Court.  Dkt. No. 31.  Thereafter, on February 10, 2005, United States District

Judge David N. Hurd reinstated a prior stay of this action while Huntley filed a motion to vacate his

judgment of conviction pursuant to New York Criminal Procedure Law ("CPL"), Section 440.10

("CPL Motion") in Schenectady County Court.  Dkt. Nos. 23, 39, 40.  That application was denied

on September 20, 2005, and permission for leave to appeal was denied by the Appellate Division,

Third Department on December 13, 2005 .[6]  Dkt. No. 47.  Accordingly, on February 28, 2006, Judge

---

[4] The state court records were submitted to the Court in various stages and were not sequentially paginated.  Therefore, the Court relies on facts set forth in several sources, including the Trial Transcript ("Trial Tr."), Appellant's Record on Appeal ("R.") and Respondent's Appendix ("RA."), as referenced herein.

[5] Huntley sent to the Court a "memorandum of law" in reply to respondent's answer.  Dkt. No. 9. Then-Magistrate Judge Sharpe reasoned that since a "memorandum of law" is not properly filed in actions brought under 28 U.S.C. § 2254, the submission should be considered a traverse.  Dkt. No. 11.  However, Rule 5 governing Section 2254 proceedings does not contemplate a traverse to an answer, except under special circumstances, which petitioner failed to present in this case.  Dkt. No. 11.  As such, that submission was inadvertently docketed but thereafter was stricken from the docket by Judge Sharpe as improper pursuant to the Rules Governing Section 2254 Cases in the United States District Court. Dkt. No. 11. Accordingly, this Court does not consider that submission herein.

[6] Petitioner's CPL § 440.10 motion addressed new claims not included in the present petition, specifically: (1) ineffective assistance of counsel based on his attorney's failure to object to closure of the courtroom; (2) ineffective assistance of counsel because his attorney failed to object to the testimony of witnesses who allegedly spoke to jurors and failed to move for a mistrial based on juror misconduct; (3) denial of *Brady* material at trial; (4) failure of the prosecution to prove all elements of the offenses submitted to the jury beyond a reasonable doubt; (5) improper jury charges; and (6) invalidity of his indictment as a matter of law.  *See* CPL § 440.10 Motion at pp. 1-31.  The Court previously informed petitioner that in the event his 440.10 motion addressed a new claim, once the new claim was fully exhausted in state court, petitioner was required to file a motion to amend his petition to set forth any additional, newly exhausted

Hurd lifted the stay in this action.  Dkt. No. 48.  This action has been referred to this Court by Judge

Hurd for a report and recommendation, which this Court now issues pursuant to 28 U.S.C. § 636(b)

and Northern District of New York Local Rule 72.3(c).

## II.   **DISCUSSION**

## A.   **Fourth Amendment Claim**

_____In his first ground, Huntley argues that the New York State Police did not have probable

cause to arrest him on the New York State Thruway on March 19, 1996.  *See* Petition at pp. 5, 8.[7]

Huntley claims that the trial court erred in denying his request for a *Dunaway*[8] hearing to permit him

to challenge the probable cause for the arrest.  *Id.*  Specifically, Huntley asserts that the probable

cause for his arrest was improperly based on the testimony of Timothy Beman, a purportedly

unreliable informant lacking any credibility, and a *Dunaway* hearing would have enabled him to

establish the flaws in Beman's testimony.  *Id.*  In addition, Huntley maintains that his illegal arrest[9]

---

claims.  *See* Dkt. No. 23.  Following the denial of his motion and leave to appeal in state court, petitioner did not move to amend his petition to reflect any additional, newly exhausted claims.  As such, the Court considers only the grounds for relief set forth in the present petition.

[7] For convenience, the Court has consecutively paginated Huntley's Petition.

[8] Pursuant to *Dunaway v. New York*, 442 U.S. 200 (1979), a defendant is entitled to move for a hearing to suppress statements as the product of an arrest without probable cause.  In addition, a defendant is entitled to move for a hearing, known in New York as a *Huntley* hearing, to seek suppression of statements made involuntarily.  *See* CPL § 710.20(3); *see also People v. Huntley*, 15 N.Y.2d 71 (1965) (adopting Massachusetts procedure, as described in *Jackson v. Denno*, 378 U.S. 368, requiring judges to make express findings regarding the voluntariness of an accused's statements before the issue is submitted to the jury at trial).  As mentioned above, petitioner requested a *Dunaway* hearing during his court-ordered *Huntley* hearing.

[9] Huntley's claim that his arrest was illegal is rooted in the Fourth Amendment to the United States Constitution.  *See Rodriguez v. Zon*, No. 01-CV-2036, 2004 WL 1752418, at *7 (E.D.N.Y. Aug. 5, 2004); *McPherson v. Greiner*, No. 02 CIV.2726, 2003 WL 22405449, at *16 (S.D.N.Y. Oct. 22, 2003).

lead to his subsequent statements to Investigator McHugh, which should have been suppressed.[10]

*Id.* at p. 8.

In this Circuit, the merits of a Fourth Amendment claim asserted in a federal habeas petition may only be properly reviewed by a district court where: (1) the state has provided no corrective procedures to redress the alleged Fourth Amendment violations or (2) the state has provided a corrective mechanism, but the petitioner was precluded from availing himself of such procedure due to an unconscionable breakdown in the underlying process. *Capellan v. Riley*, 975 F.2d 67, 70 (2d Cir. 1992) (citing *Stone v. Powell*, 428 U.S. 465, 481-82 (1976)); *see also Campbell v. Greene*, 440 F. Supp. 2d 125, 138 (N.D.N.Y. 2006) (McCurn, J.); *Martinez v. Senkowski*, No. 6:97-CV-0624, 2000 WL 888031, at *7 (N.D.N.Y. June 28, 2000) (Scullin, C.J.) (adopting Report-Recommendation of Magistrate Judge Gary L. Sharpe). States are required only to provide "an *opportunity* for full and fair litigation of a fourth amendment claim." *Capellan*, 975 F.2d at 71 (emphasis in original).

New York State has provided an opportunity for criminal defendants to fully and fairly litigate Fourth Amendment claims. *See* CPL § 710; *Capellan*, 975 F.2d at 70 n.1 ("'[F]ederal courts

---

[10] Huntley alleges that his arrest on March 19, 1996 in Albany County for possession of crack cocaine lacked probable cause, and therefore his March 22, 1996 statements to Investigator McHugh regarding the Cumberland Farms robbery should be suppressed. *See* Petition at pp. 5, 8. On direct appeal, the People highlighted that three to four days passed between petitioner's March 19 arrest on the drug charges and his interview with Investigator McHugh. *See* Respondent's App. Brief at p. 24. Further, Huntley had been assigned counsel on the drug charges and had been released from custody on those charges prior to meeting with Schenectady County police regarding the robbery. *Id.* The People emphasized that "any taint or coercive effect that could possibly have resulted from the Albany arrest, even if it had been unlawful, was fully attenuated by the time the defendant made his statements in Schenectady." *Id.*

As to the present petition, respondent did not allege that any lack of probable cause for the Albany County arrest is irrelevant to petitioner's subsequent statements regarding the Cumberland Farms robbery. Given that respondent did not raise this argument, and the Court can recommend dismissal of petitioner's Fourth Amendment claims on other grounds, the Court declines to explore this issue at this time.

have approved New York's procedure for litigating Fourth Amendment claims . . . as being facially

adequate.'") (quoting *Holmes v. Scully*, 706 F. Supp. 195, 201 (E.D.N.Y. 1989)); *Jackson v. Lacy*,

74 F. Supp. 2d 173, 176 (N.D.N.Y. 1999) (McAvoy, C.J.) (adopting Report-Recommendation of

Magistrate Judge Ralph W. Smith, Jr.).  Specifically, under the CPL, a criminal defendant may

move to suppress evidence he believes was unlawfully or improperly obtained where the defendant

"has reasonable cause to believe that such [evidence] may be offered against him in a criminal

action."  *See* CPL § 710.20.  Where the state has provided a mechanism to correct Fourth

Amendment violations, a "mere disagreement with the outcome of a state court ruling is not the

equivalent of an unconscionable breakdown in the state's corrective process."  *Capellan*, 975 F.2d

at 72.  Rather, an "unconscionable breakdown" requires the "disruption or obstruction of a state

proceeding."  *Id.* at 70.

Accordingly, in light of *Stone* and *Capellan*, Huntley must demonstrate that he was

precluded from fully and fairly litigating the present habeas claim in the state courts in order to

establish a legal basis for this Court's review of his Fourth Amendment claim.  *Chavis v.

Henderson*, 638 F.2d 534, 538 (2d Cir. 1980), *cert. denied*, 454 U.S. 842 (1981); *Devino v. Duncan*,

No. 01 CIV. 9044, 2004 WL 884961, at *4 (S.D.N.Y. Apr. 23, 2004); *Montalvo v. Annetts*, No. 02

CIV. 1056, 2003 WL 22962504, at *16 (S.D.N.Y. Dec. 17, 2003) (citing *Chavis*) (other citations

omitted).

In his petition, Huntley does not and cannot claim that New York fails to provide corrective

procedures for violations of Fourth Amendment rights.  As mentioned above, CPL Section 710

enables defendants to move for a hearing to suppress evidence obtained in an unlawful arrest.

Rather, petitioner appears to contend that those procedures were violated because he was denied a

13

*Dunaway* hearing in which he would have inquired about the reliability of the informant who provided the information supporting his arrest.  *See* Petition at pp. 5, 8.  Essentially, Huntley's assertions allege an unconscionable breakdown of those procedures.  This Court's review of the state court proceedings establishes that Huntley was afforded wide latitude in the state courts to challenge the basis of his arrest and the reliability of the informant.

The record reveals that in his pre-trial Omnibus Motion dated August 1, 1996, Huntley initially did not request a *Dunaway* hearing on probable cause.  Omnibus Motion at R.44-53.  Rather, Huntley's Omnibus Motion only requested a *Huntley* hearing seeking suppression of his statements "pursuant to CPL Section 710.20(3) upon the grounds that the said statements were involuntarily made."[11]  Omnibus Motion at R.45.  During the course of the *Huntley* hearing ordered by the County Court, petitioner's counsel raised the issue of probable cause and made an oral request for a *Dunaway* hearing.  H. at R.194.  Despite petitioner's belated request for this inquiry, the District Attorney agreed to waive any objections regarding untimeliness and consented to petitioner filing a sworn statement alleging facts in support of his *Dunaway* hearing request.  H. at RA.65-66.  However, Huntley submitted only his attorney's affirmation which contended that he was not required under New York law to make specific factual allegations to support his request for a *Dunaway* hearing, and failed to raise any issues of fact to justify the hearing.  R.204-09 ("Attorney Affirmation").  The County Court rejected Huntley's request for a *Dunaway* hearing, finding that: (1) pursuant to the New York Court of Appeals decision in *People v. Mendoza*, 82 N.Y.2d 415

---

[11] In support of his Omnibus Motion and his request for a *Huntley* hearing, petitioner's counsel submitted an affirmation stating that Huntley's statements "were the product of an illegal stop and detention . . . without probable cause."  Omnibus Motion at R.49.  However, this allegation failed to specify which detention was made without probable cause, to set forth any facts regarding this lack of probable cause, or to formally request a *Dunaway* hearing.  Omnibus Motion at R.49-50.

(1993), "a *Dunaway* hearing is not automatic, but rather will be granted only if defendant alleges facts sufficient to justify a hearing" and (2) Huntley failed to set forth sufficient factual allegations to support a hearing on the lawfulness of his arrest.  *Dunaway* Decision and Order at R.310.  The Appellate Division, Third Department, affirmed the county court's rejection of Huntley's Fourth Amendment claims on the same grounds.  *People v. Huntley*, 259 A.D.2d 843, 844-45 (3d Dept. 1999) (citing *Mendoza*).

Based on the record and the well-reasoned decisions of two state courts, Huntley was afforded ample opportunity to set forth sufficient facts to justify a *Dunaway* hearing, as required by New York law.  Months after his Omnibus Motion was filed, the District Attorney consented to Huntley filing sworn allegations of fact in support of his request for a *Dunaway* hearing.  However, Huntley failed to do so.  Instead, he submitted an attorney affirmation stating that factual allegations were not necessary to obtain a hearing to probe the probable cause for his arrest.  The County Court decided, and the Appellate Division agreed, that New York law requires Huntley to set forth sufficient facts to merit a *Dunaway* hearing.  Although Huntley ultimately lost on the merits of his motion for a *Dunaway* hearing, he had every opportunity to present issues of fact regarding his Fourth Amendment claims and to litigate his suppression motion.  Huntley's disagreement with the outcome of the state court rulings "is not the equivalent of an unconscionable breakdown in the state's corrective process."  *Capellan*, 975 F.2d at 72.

Since Huntley has presented no evidence that the state courts failed to conduct a reasoned inquiry into the relevant questions of law and fact regarding his motion for a *Dunaway* hearing, the Fourth Amendment claims asserted by Huntley in his first ground for relief should be denied. *Capellan*, 975 F.2d at 70 (citation omitted); *see also Brown v. Connell*, No. 04 Civ. 10152, 2006

15

WL 1132053 (S.D.N.Y. Apr. 28, 2006 ) [*adopted*, *Brown v. Connell*, No. CIV. 10152, 2006 WL 1880546 (S.D.N.Y. Jul. 5, 2006)] (declining to consider habeas petitioner's Fourth Amendment claims where state court denied his motion for a *Dunaway* hearing on the merits).

**B.**     **Applicable Standard of Review**

In *Rodriguez v. Miller*, 439 F.3d 68 (2d Cir. 2006), the Second Circuit observed that under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"):

> a federal court may award habeas corpus relief with respect to a claim adjudicated on the merits in state court only if the adjudication resulted in an outcome that: (1) was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

*Rodriguez*, 439 F.3d at 73 (quoting 28 U.S.C. § 2254(d)); *see also DeBerry v. Portuondo*, 403 F.3d 57, 66 (2d Cir. 2005); *Miranda v. Bennett*, 322 F.3d 171, 177-78 (2d Cir. 2003). The AEDPA also requires that in any such proceeding "a determination of a factual issue made by a State court shall be presumed to be correct [and t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also DeBerry*, 403 F.3d at 66; *Boyette v. LeFevre*, 246 F.3d 76, 88 (2d Cir. 2001).

"A state court adjudication is 'contrary to' clearly established federal law only if 'the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts.'" *Rodriguez*, 439 F.3d at 73 (quoting *Williams v. Taylor*, 529 U.S. 362, 413 (2000)). Under the "unreasonable application" clause of the AEDPA, a federal habeas court may grant the writ only where the state court's decision "identifies the correct governing legal

principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts

of the prisoner's case." *Rodriguez*, 439 F.3d at 73 (quoting *Williams*, 529 U.S. at 413). A federal

court engaged in habeas review is not charged with determining whether the state court's

determination was merely incorrect or erroneous, but instead whether such determination was

"objectively unreasonable." *Williams*, 529 U.S. at 409; *see also Sellan v. Kuhlman*, 261 F.3d 303,

315 (2d Cir. 2001). The *Rodriguez* court noted that although "'some increment of incorrectness

beyond error is required'" in order to grant a federal habeas application, that increment "need not

be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as

to suggest judicial incompetence." *Rodriguez*, 439 F.3d at 73 (quoting *Francis S. v. Stone*, 221

F.3d 100, 111 (2d Cir. 2000)); *see also Hawkins v. Costello*, 460 F.3d 238, 243 (2d Cir. 2006).

### C.      Substance of Huntley's Remaining Claims

#### 1.      Coerced and Involuntary Statements

Petitioner asserts in his second ground that habeas relief is warranted because statements he

made to the police while in custody were coerced and involuntary, and should not have been

admitted at his trial.  Specifically, Huntley claims his statements were induced by Investigator

McHugh's promise to inform the prosecutor that Huntley cooperated in the investigation in order to

procure Huntley a "deal".  *See* Petition at pp. 5, 9.  On direct appeal, the Appellate Division, Third

Department determined that based on the totality of the circumstances, petitioner's statements were

"in all respects voluntary."  *Huntley*, 259 A.D.2d at 845-46.

#### i)      Clearly Established Supreme Court Precedent

The voluntariness of an accused's custodial statements is rooted in the due process clause of

the Fourteenth Amendment, which requires "that state action, whether through one agency or

another, shall be consistent with the fundamental principles of liberty and justice which lie at the base of all our civil and political institutions." *Brown v. Mississippi*, 297 U.S. 278, 286 (1936) (quoting *Hebert v. Louisiana*, 272 U.S. 312, 316 (1926)).  The Supreme Court "has long held that certain interrogation techniques . . . are so offensive to a civilized system of justice that they must be condemned under the Due Process Clause of the Fourteenth Amendment." *Miller v. Fenton*, 474 U.S. 104, 109 (1985).  Confessions are measured against the requirements of due process, even after the holding in *Miranda v. Arizona*, 384 U.S. 436 (1996) applying the privilege against self-incrimination to custodial interrogations. *Id.* at 110.  The "ultimate question" is whether "under the totality of the circumstances, the challenged confession was obtained in a manner compatible with the requirements of the Constitution." *Id.* at 112; *see also Withrow v. Williams*, 507 U.S. 680, 688-89, 693-94 (1993).

The question of whether a confession was voluntary or involuntary "'is a legal question requiring independent federal determination.'" *Pou v. Keane*, 977 F. Supp. 577, 583 (N.D.N.Y. 1997) (Kahn, J.) (adopting Report-Recommendation of Magistrate Judge Ralph W. Smith, Jr.) (quoting *Miller*, 474 U.S. at 110).  A state court determination regarding the voluntariness of a confession is not binding in federal habeas corpus proceedings. *Id.* (citing *Davis v. North Carolina*, 384 U.S. 737, 741-42) (1966)).

The test of the voluntariness of a confession is whether examination of all the circumstances reveals that the conduct of "'law enforcement officials was such as to overbear [the defendant's] will to resist and bring about confessions not freely self-determined.'" *United States v. Guarno*, 819 F.2d 28, 30 (2d Cir. 1987) (citing *United States v. Ferrara*, 377 F.2d 16, 17 (2d Cir. 1967), *cert. denied*, 389 U.S. 908 (1967) (quoting *Rogers v. Richmond*, 365 U.S. 534, 544 (1961))); *see also*

18

*United States v. Ceballos*, 812 F.2d 42, 51 (2d Cir. 1987) ("The applicable standard is whether the confession is 'the product of an essentially free and unconstrained choice by its maker.'") (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 225 (1973)).  In discerning whether a confession was voluntary, a federal district court must consider the "totality of the circumstances" under which the statement was taken.  As the Second Circuit has reasoned:

> There are not two rules – standing as twin lighthouses – to guide a reviewing court safely to harbor in determining whether a confession is voluntary.  There is only one guide – the totality of the circumstances rule.  No single criterion controls whether an accused's confession is voluntary: whether a confession was obtained by coercion is determined only after careful evaluation of the totality of the surrounding circumstances.

*Green v. Scully*, 850 F.2d 894 (2d Cir. 1988), *cert. denied*, 488 U.S. 945 (1988) (citations omitted); *see also Pou*, 977 F. Supp. at 583.  In applying the totality of the circumstances test, the pertinent factors to be considered are: "(1) the characteristics of the accused, (2) the conditions of the interrogation, and (3) the conduct of law enforcement officials."  *Green*, 850 F.2d at 901-02. Characteristics pertinent to the accused include the individual's experience and background as well as the suspect's youth, education, and intelligence.  *Id.* at 902.  The interrogation conditions examined include the place where the interrogation occurs, the length of the detention, and the presence of counsel.  *Id.*  For purposes of this petition, the most critical circumstance is the conduct of law enforcement officials.  Facts relevant to such conduct include (1) whether the nature of the questioning was repeated and prolonged or failed to inform the accused of his constitutional rights; (2) whether there was physical mistreatment or prolonged restraint in handcuffs; and (3) whether other physical deprivations occurred such as refusing to provide the accused with food, water, sleep, or clothing.  *Id.* at 902 (citations omitted).  In addition, the Court will examine whether such police

19

conduct included "psychologically coercive techniques such as brainwashing or promises of leniency or other benefits." *Id.*

**ii)** **Contrary To, or Unreasonable Application Of,
Supreme Court Precedent**

Following the *Huntley* suppression hearing, the County Court made the following findings of fact: (1) that petitioner agreed to accompany Investigator McHugh to Schenectady to discuss a Schenectady matter, R.403; (2) that petitioner was not handcuffed, restrained, or under arrest, and Investigator McHugh did not discuss the robbery with petitioner en route to Schenectady, R.403-04; (3) upon arrival at the Schenectady Police Department, Investigator McHugh advised Huntley of his *Miranda* rights, reading from a pre-printed form, R.404; (4) that Huntley indicated he understood his rights, agreed to speak to the detective, and initialed as well as signed the *Miranda* rights waiver form, R.404; (5) that Huntley remained unrestrained during the interrogation, did not ask for an attorney or attempt to stop the interview, and was alert, R.405; (6) that no threats, promises, or coercive measures were used by the detective to force Huntley to waive his *Miranda* rights or to speak to the detective, R.404; (7) that Investigator McHugh informed Huntley he would tell the District Attorney if he cooperated in the interrogation, R.404-05; (8) that after Investigator McHugh and Huntley discussed the incident, petitioner agreed to provide a written statement, R.405; (9) that after the statement was completed, the detective asked Huntley to read it, to make any changes, initial at the beginning and at the end of the narrative on each page, and to sign the statement, all of which Huntley did, R.405; (10) that Investigator McHugh prepared a map of the location of the Cumberland Farms, which Huntley marked to indicate where he parked the car, R.406; (11) that Huntley discussed a photograph taken inside the Cumberland Farms during the robbery, and the

detective wrote down Huntley's description of the photo, which Huntley signed, R.406.  Petitioner

has come forward with no evidence to refute these factual findings, and accordingly, they are

presumed to be correct.

In reviewing the entire record, including the transcripts of the suppression hearing and the

trial, there is no basis to support a finding that petitioner was unable to make a knowing and

intelligent waiver of his constitutional rights.  The totality of the circumstances fully supports the

finding that Huntley's statements to Investigator McHugh were voluntary and made of his own free

will.

Specifically, petitioner's experience and background do not indicate that he was susceptible

to being coerced.  At the time he was questioned by Investigator McHugh, Huntley was nineteen

years old, had attended school through the twelfth grade, and had no trouble reading and writing

English.  Trial Tr. at pp. 1571-72.  Huntley was familiar with the criminal justice system by virtue of

his numerous convictions in the Division for Youth.  *See* Pre-Trial Proceedings (1/10/07) at R.225-

28.  In addition, in 1995, Huntley was convicted of menacing and criminal possession of a

controlled substance.  Trial Tr. at pp. 1538-40; Sentencing Tr. at R.582.  Notably, Investigator

McHugh's interview of Huntley on March 22, 1996 in connection with the Cumberland Farms

robbery was not the first time the two had met.  On February 23, 1996, Huntley was arrested by

police during a traffic stop for possession of a loaded .25 caliber pistol.  H. at R.372.  However,

Huntley was not charged, in part because Investigator McHugh arranged for Huntley to cooperate

with the Alcohol, Tobacco and Firearms unit in Albany to identify handgun sellers in the Albany

area.  *See* H. at R.372-74.  During that encounter, Investigator McHugh read Huntley his *Miranda*

rights using the same standard form he used in connection with the Cumberland Farms robbery and

21

Huntley agreed to waive his rights at that time.  H. at R.374.

Further, the conditions of the interrogation and the conduct of law enforcement support the state court's findings that petitioner's confession was voluntary.  Huntley freely accompanied Investigator McHugh to Schenectady and was not arrested or restrained .  Trial Tr. at pp. 817, 874-75.  Upon his arrival at the Schenectady Police Department, Investigator McHugh read Huntley his *Miranda* rights, which Huntley acknowledged and indicated he understood by signing a form agreeing to waive those rights and agreeing to answer questions without the presence of an attorney. Trial Tr. at pp. 876-78; H. at R.348-53.  Significantly, Huntley was familiar with being Mirandized and the waiver of those rights, as he was interrogated by Investigator McHugh regarding the unrelated weapons charge only one month prior to the robbery.  Huntley had no objection to Investigator McHugh taking a written statement from him, which the detective transcribed as Huntley recounted his version.  Trial Tr. at pp. 928-29; H. at R.170-71.  Huntley had the opportunity to review and read the statement and to make any changes.   Trial Tr. at pp. 929-37; H. at R.170-72. In fact, Huntley confirmed that the statement was accurate, true, and complete, and then signed each page of the statement as well as initialed any changes.  Trial Tr. at pp. 930-31; H. at R.170-72. Huntley not only reviewed and signed his statement, he also assisted the detective in preparing a diagram of the location of the robbery and discussed a photo from the robbery, both of which he also signed.

Huntley's willingness to answer questions without an attorney present, to waive his rights, and to review, initial, and sign his written statement in several places, as well as sign a diagram of the robbery site and a photograph depicting the robbery scene, all indicate Huntley's statements to Investigator McHugh were purely voluntary.  In addition, Huntley's frequent encounters with law

enforcement personnel prior to this interrogation, including Investigator McHugh himself, suggest

Huntley was aware of his constitutional rights, particularly his right to remain silent and his right to

an attorney.  The record is devoid of any evidence that Huntley was incapable of understanding his

*Miranda* rights.  Moreover, the record demonstrates the length of the interrogation was only about

two and a half hours.  Trial Tr. at pp. 817, 932-37.  During the interview, Huntley was not

restrained, and never requested counsel or stopped the interrogation at any point.  Trial Tr. at pp.

881-82, 942; H. at R.346-47, 379-80.  Petitioner was neither threatened with force nor subject to

coercive measures at any time while in police custody.  Trial Tr. at p. 882; H. at R.353-54.

Nonetheless, Huntley contends his statements should be considered involuntary and coerced

based on the conduct of Investigator McHugh.  The principal thrust of petitioner's argument is that

his statement was coerced because Investigator McHugh promised to inform the prosecutor whether

Huntley cooperated in the investigation in order to procure Huntley a deal.  Petition at pp. 5, 9.  The

record establishes that Investigator McHugh told Huntley that if Huntley cooperated with the

investigation, he would inform the District Attorney of his cooperation.  H. at R.356.  At the

suppression hearing, Investigator McHugh testified that he did inform the District Attorney of

Huntley's cooperation.  H. at R.366.

Investigator McHugh's statement to Huntley regarding his cooperation was not coercive and

did not usurp Huntley's free will.  *See Ferrara*, 377 F.2d at 17.  Rather, the detective specifically

informed Huntley that he "can't make . . . any promises. . . I can't wheel and deal any time or make

you any offers on that.  The only thing I can promise you is that if you cooperate with me, I'll tell

the District Attorney."  H. at R.356.  Investigator McHugh also noted it was in Huntley's "best

interests to cooperate with the investigation."  H. at R.357.  Investigator McHugh did not promise

petitioner that he would receive lenient treatment or that he would not be prosecuted by the District Attorney.  Before the interrogation began, the detective informed Huntley, who was not a stranger to the criminal justice system, of his *Miranda* rights.  Huntley was not threatened in any way and was not subjected to protracted questioning.  Investigator McHugh's comment was not the type of promise, standing alone, that would make Huntley's statements involuntary.  In light of all the relevant circumstances, McHugh's promise did not coerce Huntley into making any statements.

Even if Investigator McHugh's promise were construed as offering leniency to Huntley in exchange for his cooperation, "a confession is not involuntary merely because the suspect was promised leniency if he cooperated with law enforcement officials."  *Guarno*, 819 F.2d at 31.  In this circuit, it is well-settled that "the presence of a direct or implied promise of help or leniency alone has not barred the admission of a confession where the totality of the circumstances indicates it was the product of a free and independent decision."  *Green*, F.2d at 901.  Rather, "[s]o long as the characteristics of the suspect and the conduct of the law enforcement officials do not otherwise suggest that the suspect could not freely and independently decide whether to cooperate or remain silent, a confession made pursuant to a cooperation agreement is not the product of coercion."  *Guarno*, 819 F.2d at 31; *see also Ceballos*, 812 F.2d at 51; *Ferrara*, 377 F.2d at 17.

Based on this Court's independent review of the record, the totality of the circumstances establishes that Huntley's statement was made of his own free will and was not coerced by the conduct of law enforcement officials.  Therefore, Huntley's second ground for federal habeas relief should be denied.

## 2.   **Insufficiency of Evidence**

In his petition, Huntley appears to contend both that (i) the evidence presented at trial was

insufficient to support the verdict and (ii) his conviction was against the weight of the evidence.  *See* Petition at pp. 6,11.  Essentially, Huntley asserts that his conviction was improperly based on the uncorroborated testimony of his accomplices, Alexander Marcano and George Rodriguez, and the lack of credibility of informant Timothy Beman.  *See id.* at pp. 6, 11.  The Appellate Division denied petitioner's claims challenging sufficiency of the evidence and weight of the evidence.  *See Huntley*, 259 A.D.2d at 846.

### i)   <u>Clearly Established Supreme Court Precedent</u>

Under the Due Process Clause of the Fourteenth Amendment, a defendant in a criminal case may be convicted only upon proof beyond a reasonable doubt of every fact necessary to constitute the crime charged.  *See Jackson v. Virginia*, 443 U.S. 307, 315 (1979); *Fiore v. White*, 531 U.S. 225, 228-29 (2001); *In re Whinship*, 397 U.S. 358, 364 (1970); *see also Moore v. Irwin*, 908 F. Supp. 200, 204 (N.D.N.Y. 1995) (Koeltl, J., sitting by designation).  "[T]he *Jackson* inquiry does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit."  *Herrera v. Collins*, 506 U.S. 390, 402 (1993).  In other words, under federal habeas review, in considering a claim that there was insufficient evidence to support a conviction, the court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson*, 443 U.S. at 319.  This standard requires the habeas court to examine the substantive state law elements of the criminal offense.  *Id.* at 324 n.16.

**ii)**      **Contrary To, or Unreasonable Application Of,**
**Supreme Court Precedent**

"A defendant challenging the sufficiency of the evidence supporting his conviction bears a 'heavy burden', *United States v. Martinez*, 54 F.3d 1040, 1042 (2d Cir. 1995) (quoting *United States v. Sureff*, 15 F.3d 225, 228 (2d Cir. 1994), because the government receives the benefit of having all permissible inferences drawn in its favor, *id.* (citing *United States v. Nersesian*, 824 F.2d 1294, 1302 (2d Cir. 1987))." *Dixon v. Miller*, 293 F.3d 74, 81 (2d Cir. 2002). "The evidence is not viewed piecemeal, but as a whole...." *United States v. Gonzalez*, 922 F.2d 1044, 1053 (2d Cir. 1991) (citation omitted).

A person is guilty of robbery in the first degree when he forcibly steals property and in the course of the crime or immediate flight therefrom, he or another participant: (1) causes serious physical injury to a person who is not a participant in the crime; (2) is armed with a deadly weapon; (3) uses or threatens the immediate use of a dangerous instrument; or (4) displays what appears to be a pistol, revolver, rifle, shotgun, machine gun or other firearm. N.Y. Penal Law § 160.15. A person is guilty of robbery in the second degree when he forcibly steals property and: (1) he is aided by another person actually present; or (2) in the course of the crime or immediate flight therefrom, he or another participant (a) causes physical injury to a person who is not a participant in the crime or (b) displays what appears to be a pistol, revolver, rifle, shotgun, machine gun or other firearm. N.Y. Penal Law § 160.10.

Alexander Marcano and George Rodriguez both testified that petitioner actively planned and participated in the robbery. Trial Tr. at pp. 993-98, 1227-32. Moreover, in Huntley's own written and oral statements to Investigator McHugh, Huntley recounted that Marcano and Rodriguez met at

26

Huntley's house at 10 p.m. on the evening of the robbery. *See* Trial Tr. at pp. 933-37; *see also* Aff. at R.90-93. He further stated he owned one of the sawed off .22 caliber rifles used in the robbery, and Marcano owned the other. Aff. at R.90-93. Marcano brought his rifle to Huntley's house that night, and prior to the robbery, Huntley loaned Rodriguez his own gun. Aff. at R.90-91. The three men left at approximately 11 p.m. with the two guns to drive around Schenectady to find some "cheese", or money. Aff. at R.91. Huntley admitted he drove the car to the Cumberland Farms on State and Elm Streets, and parked down the street from the store. Trial Tr. at p. 1762; Aff. at R.92. Huntley witnessed Marcano and Rodriguez don the ski masks in the car and approach the Cumberland Farms, each carrying a rifle, and waited in the car for a few minutes until they returned. Trial Tr. at p. 917; Aff. at R.92. Huntley noted that when Marcano and Rodriguez returned to the car, Rodriguez informed him Marcano shot someone and they needed to drive away from the scene. Aff. at R.92. Huntley was fully aware that the shots Marcano fired may have killed the store clerk. Aff. at R.93. In his statement, Huntley admitted he drove the getaway car, but denied any knowledge that Marcano and Rodriguez intended to commit the robbery. Aff. at R.90-93. Huntley also admitted to Timothy Beman he was involved in the robbery. Trial Tr. at pp. 1144-47. Moreover, the day after the Cumberland Farms incident, Rodriguez was arrested with Huntley's rifle, which Huntley had loaned him prior to the robbery. Trial Tr. at pp. 1209, 1233, 1701-07; Aff. at R.90-91. Indeed, Rodriguez testified that two days prior to the Cumberland Farms robbery at State and Elm Streets, Huntley was the wheelman in an identical robbery conducted with Rodriguez. Trial Tr. at pp. 1221-24.

While petitioner denied at trial that he had any knowledge of the robbery or that he made any admissions to Investigator McHugh, at best petitioner raises an issue of credibility. Issues of

27

credibility are for the trier of fact to resolve.  *See Vera v. Hanslmaier*, 928 F. Supp. 278, 284

(S.D.N.Y. 1996) (citations omitted).  A review of the record in this case demonstrates the state court

did not err in determining that there was legally sufficient evidence to convict petitioner of the

crimes of robbery in the first and second degrees.  The trier of fact made a factual determination that

Huntley drove to the Cumberland Farms with the intent of committing a crime therein.  It made a

credibility determination to discount Huntley's testimony that he had no knowledge of Marcano and

Rodriguez's plan to commit the robbery.  The jury chose to credit the State's witnesses despite the

inconsistencies in the evidence.  It is not for this Court, under a legal sufficiency challenge,

to re-weigh the evidence or make its own factual or credibility determinations.[12]  Based on the

evidence viewed in the light most favorable to the prosecution, there was sufficient evidence to

convict petitioner of the crimes.  The Court "'cannot say that no reasonable jury could have found

guilt beyond a reasonable doubt on all the evidence.'" *Vera*, 928 F. Supp. at 284 (quoting *Gruttola

v. Hammock*, 639 F.2d 922, 928 (2d Cir. 1981)).  To the extent that petitioner alleges there was

insufficient evidence to support his convictions, this Court finds that the Appellate Division's

decision denying petitioner's claim, *Huntley*, 259 A.D.2d at 846, was not contrary to or an

unreasonable application of Supreme Court precedent, nor was it an unreasonable determination of

the facts.  Accordingly, petitioner's third claim should be dismissed.

In this ground, petitioner also argues his conviction was against the weight of the evidence.

Further, Huntley challenges the credibility of his accomplices and Beman, and seeks corroboration

---

[12] This differs from a weight of the evidence review in state court since the state appellate court may "weigh the relative probative force of conflicting inferences that may be drawn from the testimony." *People v. Bleakley*, 69 N.Y.2d 490, 295 (1987) (citing *People ex. rel. MacCracken v. Miller*, 291 N.Y. 55, 62 (1943)).

of accomplice testimony.  *See* Petition at pp. 6, 11.  However, these claims are not cognizable on federal habeas review.

Huntley's claim that his conviction was against the weight of the evidence is not a basis for habeas relief.  "Weight of the evidence review is a product of New York state statute and therefore merely a state law issue." *Wilson v. Supt., Attica Corr. Facility*, No. 9:00-CV-0767, 2003 WL 22765351, at *9 (N.D.N.Y. Nov. 24, 2003) (citing NY CPL § 470.15) (other citation omitted). "It is well established that habeas corpus review is not available for errors of state law." *Wilson*, 2003 WL 22765351, at *9 (citing *Estelle v. McGuire*, 502 U.S. 62, 67-69 (1991)).  Federal habeas relief is therefore not available to review a claim that challenges the weight of the evidence.  *Hyde v. Shine*, 199 U.S. 62, 84 (1905) ("In the Federal courts ... it is well settled that upon habeas corpus the court will not weigh the evidence."); *Maldonado v. Scully*, 86 F.3d 32, 35 (2d Cir. 1996); *Brown v. Superintendent*, No. 02 Civ. 4810, 2003 WL 1948803, at *4 (S.D.N.Y. Apr. 23, 2003) (citing *Maldonado*, 86 F.3d at 35 [other citation omitted]); *Cardena v. Giambruno*, No. 03 CIV 3313, 2004 WL 239722, at *4 (S.D.N.Y. Feb. 10, 2004) (challenge to weight of evidence not cognizable upon federal habeas review); *Kearse v. Artuz*, 99 CIV. 2428, 2000 WL 1253205, at *1 (S.D.N.Y. Sept. 5, 2000) ("Disagreement with a jury verdict about the weight of the evidence is not grounds for federal habeas corpus relief.").  Thus, to the extent that petitioner raises a claim regarding the "weight" of the evidence, it must be dismissed.

Huntley's specific argument in support of this claim, that the testimony of Marcano, Rodriguez, and Beman was not credible and was "unbelievable", Petition at p. 11, likewise is not reviewable because "assessments of the credibility of witnesses are for the jury and not grounds for reversal on [habeas] appeal." *Maldonado*, 86 F.2d at 35.  Since the Court must defer to the

credibility assessments made by the jury regarding this testimony, Huntley has failed to set forth a basis for habeas relief. *See Garrett v. Perlman*, 438 F. Supp. 2d 467, 470-71 (S.D.N.Y. 2006).

Moreover, petitioner's claim that the accomplice testimony of Marcano and Rodriguez was not sufficiently corroborated is based solely on the accomplice corroboration requirement of New York state law, *see* N.Y. CPL § 60.22,[13] does not constitute a claim in violation of a federal constitutional right, and therefore also is not cognizable on federal habeas corpus review. *See Mariani v. Kelly*, No. 97-CV-384, 2001 WL 1860961 (N.D.N.Y. Jan. 17, 2001) (Sharpe, M.J.) [*adopted*, *Mariani v. Kelly*, No. 97-CV-384 (Dkt. No. 38) (N.D.N.Y. Sept. 27, 2001) (Scullin, C.J.)] (citing *Estelle*, 502 U.S. at 67; *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)); *see also Martinez v. Walker*, 380 F. Supp. 2d 179, 183-84 (W.D.N.Y. 2005); *Dawson v. Donnelly*, 111 F. Supp. 2d 239, 251 (W.D.N.Y. 2000) ("New York Criminal Procedure Law ("CPL") § 60.22(1) . . . is a state law and not a Constitutional requirement, and may not be raised in a Federal habeas petition.").  In fact, "there is no federal constitutional rule requiring the corroboration of accomplice testimony." *Martinez*, 380 F. Supp. 2d at 183 ("[T]here is no absolute rule of law preventing convictions on the testimony of accomplices if juries believe them." (quoting *Caminetti v. Unites States*, 242 U.S. 470, 495 (1917))); *see also Mariani*, 2001 WL 1860961, at *4.  A conviction may be sustained on the basis of the testimony of a single accomplice "so long as that testimony is not incredible on its face

---

[13] New York Criminal Procedure Law § 60.22 provides as follows:

1.  A defendant may not be convicted of any offense upon the testimony of an accomplice unsupported by corroborative evidence tending to connect the defendant with the commission of such offense.

2.  An "accomplice" means a witness in a criminal action who, according to evidence adduced in such action, may reasonably be considered to have participated in: (a) The offense charged; or (b) An offense based upon the same or some of the same facts or conduct which constitute the offense charged.

and is capable of establishing guilt beyond a reasonable doubt." *United States v. Diaz*, 176 F.3d 52, 92 (2d Cir. 1999) (quoting *United States v. Gordon*, 987 F.2d 902, 906 (2d Cir. 1993) (citing *United States v. Parker*, 903 F.2d 91, 97 (2d Cir. 1990), *cert. denied*, 498 U.S. 872 (1990))).

"Corroboration or lack of corroboration of an accomplice's testimony goes 'to the *weight* of the evidence and not its sufficiency.'" *Martinez*, 380 F. Supp. 2d at 184 (quoting *Gordon*, 987 F.2d at 906) (emphasis added); *see also Dawson*, 11 F. Supp. 2d at 251 (quoting *Diaz*, 176 F.3d at 92). Accordingly, Huntley's claim based on lack of corroborative testimony should be dismissed.

### 3.   Ineffective Assistance of Counsel

_____Amidst his allegations in support of his Fourth Amendment claim, Huntley states that his motion for a *Dunaway* hearing was denied "for allegedly [sic] minor procedural errors, in that my lawyer failed to place sufficient facts on the record to justify for [sic] Dunaway hearing not to be denied." Petition at p. 8.  In his direct appeal to the Appellate Division, Third Department, Huntley made a nearly identical statement regarding the conduct of his trial counsel.  *See* Appellant's Brief at p. 9.  Although Huntley does not squarely raise ineffective assistance of counsel as a ground in support of his petition, to the extent this statement can be construed as a claim of ineffective assistance of counsel, the Court will consider it "adjudicated on the merits" by the state court[14] and will afford it AEDPA deference herein.

---

[14] An issue raised by a petitioner at the state court "may be considered adjudicated 'on the merits' for AEDPA purposes even when the state court does not specifically mention the claim but uses general language referable to the merits." *Norde v. Keane*, 294 F.3d 401, 410 (2d Cir. 2002); *Rosa v. McCray*, 396 F.3d 210, 220 (2d Cir. 2005); *Aparicio v. Artuz*, 269 F.3d 78, 92 (2d Cir. 2001) (finding that even where claim was not "explicitly addressed" by the Appellate Division, it was technically adjudicated on the merits); *see also Jimenez v. Walker*, 458 F.3d 130, 145-46 (2d Cir. 2006) (discussing interpretation of state court adjudication "on the merits" under the AEDPA).  Accordingly, although the Appellate Division did not directly address this statement relating to the effectiveness of Huntley's counsel in its opinion, *see People v. Huntley*, 259 A.D.2d 843 (3d Dept. 1999), it is nonetheless considered adjudicated on the merits for AEDPA purposes.

### i)      Clearly Established Supreme Court Precedent

The Sixth Amendment to the United States Constitution provides that: "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."  U.S. Const. amend. VI.  To establish a violation of this right to the effective assistance of counsel, a habeas petitioner must show both: (1) that counsel's representation fell below an objective standard of reasonableness, measured in the light of prevailing professional norms; and (2) resulting prejudice, that is, a reasonable probability that, but for counsel's unprofessional performance, the outcome of the proceeding would have been different.  *Strickland v. Washington*, 446 U.S. 674, 688-90 (1984); *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) ("the legal principles that govern claims of ineffective assistance of counsel" were established in *Strickland*).[15]  In addition, "[w]here defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the [petitioner] must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice."  *Kimmelman v. Morrison*, 477 U.S. 365, 374 (1986); *see also Mosby v. Senkowski*, __ F.3d __, No. 05-1122, 2006 WL 3439478, at *3 (2d Cir. Nov. 30, 2006); *Nell v. James*, 811 F.2d 100, 105-06 (2d Cir. 1987).

### ii)     Contrary To, or Unreasonable Application Of, Supreme Court Precedent

Huntley appears to fault his attorney for failing to place sufficient facts on the record to demonstrate the need for a *Dunaway* hearing regarding probable cause for his arrest on the New York State Thruway on March 19, 1996.  Huntley argues that his arrest was based on information

---

[15] In *Williams v. Taylor*, the Supreme Court declared that "the rule set forth in *Strickland* qualifies as "clearly established Federal law[.]" *Williams*, 529 U.S. 362, 391 (2000).

provided by Timothy Beman, an allegedly unreliable informant lacking in credibility, and a hearing on probable cause was necessary to probe the flaws in his testimony.  Petition at pp. 5, 8.

However, Huntley has wholly failed to provide any facts in support of this claim regarding his counsel.  It is incumbent upon petitioner to establish his counsel's conduct was outside the range of professionally competent assistance and prejudiced the outcome of his case.  In addition, given that his allegation involves Fourth Amendment considerations, petitioner also must prove his Fourth Amendment claim was meritorious.  Huntley has presented no evidence whatsoever to demonstrate that the state court's adjudication resulted in an outcome that was contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent as articulated in *Strickland* and *Kimmelman*.

Moreover, even assuming *arguendo* that counsel's representation fell below the objective standard of reasonableness, the evidence developed at trial reveals that petitioner would be unable to establish prejudice and merit to his Fourth Amendment claim.  Specifically, Huntley must prove that if counsel had raised issues of fact regarding Beman's reliability and the basis of the probable cause for his arrest, he would have received a *Dunaway* hearing and would have succeeded in suppressing his statements as the product of an unlawful arrest.  However, the testimony adduced at trial indicates that Beman was a reliable informant, and law enforcement had sufficient probable cause to stop Beman's vehicle on the Thruway on March 19, 1986 and to arrest Huntley.

In New York, to determine whether probable cause for an arrest exists, the two-pronged test articulated in *Aguilar v. Texas*, 378 U.S. 108 (1964) and *Spinelli v. United States*, 393 U.S. 410 (1969) is applied.  *See People v. Griminger*, 71 N.Y.2d 635, 637 (1988) ("[A]s a matter of State law, our courts should apply the *Aguilar-Spinelli* test.").  Under the *Aguilar-Spinelli* test, a probable

cause determination is based on (1) the veracity or reliability of the source of the information and (2) the basis of the informant's knowledge.  *Id.* at 638-39 (citing *Aguilar* and *Spinelli*).[16]  According to the New York Court of Appeals, this inquiry provides "reasonable assurance that probable cause determinations are based on information derived from a credible source with firsthand information." *Id.* at 639.  To determine the reliability and veracity of an informant, New York courts examine numerous factors including (1) the specificity of the tip; (2) the accuracy of the tip, where the details are corroborated by the police; (3) whether the informant made admissions against his penal interest; (4) whether the informant's statements were made under oath; and (5) the informant's history of providing accurate information.  *See People v. Alston*, 1 A.D.3d 627, 628 (3d Dept. 2003), *lv. denied*, 1 N.Y.3d 594 (2004); *People v. Mantia*, 299 A.D.2d 664, 665-66 (3d Dept. 2002). *lv. denied*, 99 N.Y.2d 617 (2003); *People v. Calise*, 256 A.D.2d 64, 65 (1st Dept. 1998), *lv. denied*, 93 N.Y.2d 851 (1999); *People v. Benjamin*, 150 A.D.2d 952, 953 (3d Dept. 1989).  In evaluating the basis of an informant's knowledge, New York courts consider whether the informant has direct personal knowledge of the defendant's activities.  *See Benjamin*, 150 A.D.2d at 953.  Probable cause may be established through hearsay information.  *People v. Ketcham*, 93 N.Y.2d 416, 420 (1999) (quoting *Spinelli*, 393 U.S. at 417).  However, "there must be evidence that the informant is

---

[16]  In *Illinois v. Gates*, 462 U.S. 213 (1983), the United States Supreme Court reversed the holdings of *Aguilar* and *Spinelli* in favor of a "totality of the circumstances" approach to probable cause determinations. *See Gates*, 462 U.S. at 238.  However, New York State rejected the totality of the circumstances approach and continues to apply the more stringent *Aguilar-Spinelli* standard to issues of probable cause. *Griminger*, 71 N.Y.2d at 637.

Under *Gates*, in assessing whether the testimony of an informant establishes probable cause, a court may consider numerous factors including the informant's veracity, reliability and basis of knowledge as well as independent corroboration of the informant's statements. *United States v. Gagnon*, 373 F.3d 230, 235-36 (2d Cir. 2004) (citing *Gates*, 462 U.S. at 230, 241-44).  Probable cause exists "if a law enforcement official, on the basis of the totality of the circumstances, has sufficient knowledge or reasonably trustworthy information to justify a person of reasonable caution in believing that an offense has been or is being committed by the person to be arrested." *Id.* at 236.

generally trustworthy and that the information imparted 'was obtained in a reliable way' . . . – that it constitutes more than unsubstantiated rumor, unfounded accusation or conclusory characterization." *Ketcham*, 93 N.Y.2d at 420 (quoting *Spinelli*, 393 U.S. at 417).

In this case, the facts adduced at trial establish Beman's reliability.  First, statements made by Huntley and Marcano formed the basis of Beman's knowledge about the Cumberland Farms robbery.  Prior to the robbery, Beman knew Huntley for about two months and Marcano for approximately three months.  Trial Tr. at p. 1126.  He often saw the two men together during that time period, and he visited Huntley at his house almost every day.  Trial Tr. at p. 1126-29.  Beman testified that on the morning of March 18, 1996, Huntley and Marcano arrived at his house, and Marcano told him of the Cumberland Farms robbery.  Trial Tr. at pp. 1144-49.  Marcano asked him to drive them to New York City to avoid the police.  Trial Tr. at pp. 1144-49.  Huntley also planned to purchase crack cocaine in New York City.  Trial Tr. at pp. 1150-52, 1628.  According to Beman, Huntley stated while he would not appear on the security cameras at the Cumberland Farms, he was the "wheelman" and drove the car from the robbery.  Trial Tr. at p. 1147.

Moreover, Beman was a confidential informant with the DEA, who had worked as an informant for the DEA in the past.  Trial Tr. at pp. 1151, 1847-51.  Specifically, Beman became a DEA informant in the fall of 1995.  Trial Tr. at p. 1165.  Upon speaking with Huntley and Marcano regarding the robbery and the New York City trip, Beman contacted Agent Ulises Delgado at the DEA Task Force.  Trial Tr. at pp.1151-52.  Beman provided Agent Delgado with specific details of the knowledge he gleaned from the two men and requested guidance from the Task Force.  Trial Tr. at p. 1152.  DEA authorities instructed Beman to make the trip to New York City and to notify his DEA contact en route back to Schenectady.  Trial Tr. at pp. 1850-51.  Before stopping Beman's

vehicle on the Thruway, New York State police confirmed the details of Beman's tip by personal observation, including the description of the car, its occupants, and its route. Trial Tr. at pp. 1347-50. In addition, the information supplied by Beman regarding Huntley and Marcano's involvement in the Cumberland Farms robbery was independently corroborated by facts already provided to the police by George Rodriguez. Trial Tr. at pp. 787-93. Although Beman was reimbursed for his expenses to New York City, he did not receive any compensation or benefit in exchange for reporting the information or testifying at trial. Trial Tr. at pp. 1163-75, 1858-59.

Huntley's allegations that Beman was unreliable, *see* Petition at p. 8, lack support in the record and are based solely on conclusory, self-serving statements. The Court cannot grant habeas relief based upon unsubstantiated conclusions, opinions or speculation. *Wood v. Bartholomew*, 516 U.S. 1, 8 (1995) (federal courts should not grant "habeas relief on the basis of little more than speculation with slight support"); *Williams v. Burge*, No. 02-CV-0695, 2005 WL 2179423, at *16 (N.D.N.Y. Aug. 15, 2005) (Peebles, M.J.) [*adopted*, *Williams v. Burge*, No. 02-CV-0695 (Dkt. No. 35) (N.D.N.Y. Dec. 7, 2005) (Hurd, D.J.)].

The accuracy and specificity of Beman's information, as manifested by the ensuing trip to New York City and law enforcement's confirmation of the car, its occupants, and route, support the reliability and credibility of Beman as an informant. *See, e.g., Gagnon*, 373 F.3d at 240 (noting that law enforcement confirmation of the details of the tip, including the type of vehicle driven by the defendant, increased reliability of the informant); *Mantia*, 299 A.D.2d at 665-66 (finding that the reliability of the informant was established by the accuracy of the details conveyed to the police, and the veracity of which was confirmed by police, who observed the events occur as the informant had predicted). Beman was a past DEA informant who had personal knowledge, obtained from Huntley

36

himself, regarding Huntley's involvement in the Cumberland Farms robbery.  These facts support the reliability of Beman as an informant and the basis of the probable cause for Huntley's arrest.[17] Accordingly, petitioner lacks proof that (1) his counsel's action prejudiced the outcome of any probable cause hearing which would have been held and (2) that his Fourth Amendment claim is meritorious.  Therefore, it cannot be said that petitioner's counsel performed ineffectively in failing to place sufficient facts on the record to support a *Dunaway* hearing on probable cause.  To the extent Huntley asserts ineffective assistance of counsel, that claim should be dismissed.

### 4.    **Unduly Harsh and Excessive Sentence**

Petitioner's final habeas claim alleges that the sentences imposed on him by the trial court are unduly harsh and excessive.  *See* Petition at pp. 6, 13.  Huntley further contends that although he was merely the unknowing getaway driver, his accomplices were given more lenient sentences.  *See* Petition at p. 13.  Huntley was sentenced as a second felony offender by Justice Guy Tomlinson to twenty-five-years imprisonment on each of the two counts of first degree robbery and fifteen-years imprisonment on each of the two counts of second degree robbery, to be served concurrently. Sentencing Tr. at R.609-10.  The Appellate Division, Third Department determined that the trial court did not abuse its discretion in imposing these sentences.  *Huntley*, 259 A.D.2d at 846. This claim fails to acknowledge the established authority which holds that "[n]o federal constitutional issue is presented where . . . the sentence is within the range prescribed by state law."

---

[17] It appears that when a defendant is subsequently convicted of the charges following an arrest, "that conviction normally 'would be conclusive evidence of probable cause' if the conviction 'survives appeal.'" *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (quoting *Broughton v. State*, 37 N.Y.2d 451, 458 (1975)).  Arguably, probable cause for Huntley's arrest on March 19, 1996 further was established by Huntley's subsequent convictions of robbery in the first and second degrees, which survived despite his appeal.

*White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992) (citing *Underwood v. Kelly*, 692 F. Supp. 146 (E.D.N.Y. 1988), *aff'd mem.*, 875 F.2d 857 (2d Cir. 1989)); *see also Brown v. Donnelly*, 371 F. Supp. 2d 332, 343-44 (W.D.N.Y. 2005); *Jackson v. Lacy*, 74 F. Supp. 2d 173, 181 (N.D.N.Y. 1999) (McAvoy, C.J.) ("It is well-settled . . . that a prisoner may not challenge the length of a sentence that does not exceed the maximum set by state law.").

Petitioner was convicted of two counts of Robbery in the First Degree, a class B felony, in violation of New York Penal Law § 160.15.  Petitioner also was convicted of two counts of Robbery in the Second Degree, a Class C felony, in violation of New York Penal Law § 160.10.  In addition, Huntley was determined to be a second felony offender.  Sentencing Tr. at R.582-85, 606-09. Under New York Penal Law, the sentence on a class B felony for a second felony offender shall be an indeterminate sentence consisting of a minimum sentence of nine years and a maximum sentence of twenty-five years.  *See* N.Y. Penal Law § 70.06(3)(b).  The sentence on a class C felony for a second felony offender shall be an indeterminate sentence of six years and a maximum sentence of fifteen years.  *See* N.Y. Penal Law § 70.06(3)(c).  Petitioner was sentenced to twenty-five years on each of the first degree robbery charges, and fifteen years on each of the second degree robbery charges, which fall squarely within the range prescribed by state law.  The trial court was within its discretion to impose these sentences, and therefore Huntley fails to raise a federal constitutional issue that warrants habeas relief.  Accordingly, this Court recommends denial of petitioner's harsh and excessive sentence claim.

Arguably, this ground could be construed as a claim that the sentence imposed constitutes a violation of the Eighth Amendment to the United States Constitution, which prohibits the imposition of a sentence that is "grossly disproportionate to the severity of the crime."  *Rummel v.*

*Estelle*, 445 U.S. 263, 271 (1980).  However, "[o]utside the context of capital punishment,

successful challenges to the proportionality of particular sentences have been exceedingly rare."  *Id.*

at 272; *see Harmelin v. Michigan*, 501 U.S. 957, 995 (1991) (the Eighth Amendment only forbids

sentences which are "grossly disproportionate" to the crime); *see also Hutto v. Davis*, 454 U.S. 370,

374 (1982).  A sentence of imprisonment which is within the limits of a valid state statute is simply

not cruel and unusual punishment in the constitutional sense.  *Brumfield v. Stinson*, 297 F. Supp. 2d

607, 622 (W.D.N.Y. 2003) (citing *Thompson v. Lord*, No. 97-CV-0792, 2002 WL 31678312, at *8

(N.D.N.Y. Nov. 8, 2002) (Peebles, M.J.) [*adopted*, *Thompson v. Lord*, No. 97-CV-0792 (Dkt. No.

19) (N.D.N.Y. Sept. 25, 2003) (Scullin, C.J.)] (other citations omitted).  Therefore, this final claim

in Huntley's petition should be denied.

Huntley also claims that his sentences were unfair as compared to those imposed on his co-

defendants, who testified against him and received lesser sentences.[18]  *See* Pet. at pp. 6, 13.

However, "[a]bsent extraordinary circumstances, a defendant has no constitutional or otherwise

fundamental interest in whether a sentence reflects his or her relative culpability with respect to his

or her codefendants."  *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995); *United States v. Perez*,

904 F.2d 142, 146 (2d Cir. 1990), *cert. denied*, 498 U.S. 905 (1990) ("[D]isparities in sentences

among codefendants are generally not reviewable."); *Rodriguez v. Senkowski*, No. 03 Civ. 3314,

2004 WL 503451, at *38 (S.D.N.Y. Mar. 15, 2004).  This rule is particularly relevant "where a co-

defendant who cooperates and testifies against the defendant is given a lesser sentence than the

---

[18] At trial, the jury heard testimony that Marcano, a sixteen-year-old first-time felon, pled guilty to first degree robbery, waived appeal, agreed to testify against both accomplices, and received a sentence of nine to eighteen years in prison.  Trial Tr. at pp. 979-82.  Rodriguez, who was terminally ill, also pled guilty to first degree robbery, waived appeal, agreed to testify against both accomplices, and received a sentence of ten and a half years in prison.  Trial Tr. at pp. 1206-08.

defendant who goes to trial and is convicted after trial." *Rodriguez*, 2004 WL 503451, at \*38; *see also Zada v. Scully*, 847 F. Supp. 325, 328 (S.D.N.Y. 1994) ("The Court finds no federal constitutional violation with respect to petitioner's claim that the sentence . . . is excessive in comparison to those imposed under plea bargains on his co-defendants.  Having gone to trial, petitioner necessarily placed the full details of the crime squarely before the sentencing judge, who acted on the facts before him.").  As such, Huntley's harsh and excessive sentence claim based on the disparate sentences of his accomplices also should be denied.

**WHEREFORE**, based upon the foregoing, it is hereby

**RECOMMENDED**, that the petitioner for a writ of habeas corpus (Dkt. No. 1) be **DENIED** and **DISMISSED**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW**.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e); *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)).

Dated: December 5, 2006
      Syracuse, New York

George H. Lowe
United States Magistrate Judge